Lily Becker SBN 251145
STEVENS BECKER P.C.
lily@stevensbecker.com
345 West Portal Avenue, Suite 110
San Francisco, California 94127
(415) 237-3830

Attorneys for Applicant
Bull Gaming N.V.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re *Ex Parte* Application of Bull Gaming N.V., <br><br> Applicant | CASE NO: <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION OF BULL GAMING N.V. FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 AUTHORIZING DISCOVERY FOR USE IN FOREIGN PROCEEDINGS** |

# TABLE OF CONTENTS

I. INTRODUCTION ………………………………………………………………..……1

II. BACKGROUND ……………………………………………………………………..…....1

III. LEGAL STANDARD ……………………………………………………………….4

IV. ARGUMENT …………………………………………………………………..……5

    a. Statutory Factors ………………………………………………………………..5

    b. Discretionary Factors ……………………………………………………………...6

        i. Kraken is not a participant in the foreign action …………………....………..6

        ii. Curaçao courts are receptive to U.S. judicial assistance ………...…………....6

        iii. There is no circumvention of foreign discovery restrictions or other policies ...7

        iv. The request is not unduly burdensome or intrusive ….…………...………...7

V. CONCLUSION……………………………………………………………………...7

# TABLE OF AUTHORITIES

Cases

*Bitwallet PTE. Ltd. v. Meta Platforms, Inc.*, No. 22-mc-80182-HSG, 2023 U.S. Dist. LEXIS 15458 (N.D. Cal. Jan. 30, 2023) ................................................................................................ 7

*In re Med. Inc. Ass'n Smile Create*, 547 F. Supp. 3d 894 (N.D. Cal. 2021) ............................... 7

*Intel Corp. v. Advanced Micro Devices*, 542 U.S. 241 (2004) ........................................... *passim*

*IPCom GmbH & Co. KG v. Apple Inc.*, 61 F. Supp. 3d 919 (N.D. Cal. 2014) ..……………..... 5

*Palantir Techs., Inc. v. Abramowitz*, 415 F. Supp. 3d 907 (N.D. Cal. 2019) .............................. 7

*Super Vitaminas, S.A.*, No. 17-mc-80125-SVK, 2017 U.S. Dist. LEXIS 191845 (N.D. Cal. Nov. 20, 2017) ................................................................................................................... 5

Statutes

28 U.S.C. §1782 ..................................................................................................................*passim*

## I. INTRODUCTION

Bull Gaming N.V. ("Applicant") brings this application under 28 U.S.C. §1782 for leave to issue a subpoena to Payward, Inc. d/b/a Kraken ("Kraken") to obtain information relevant to a proceeding Applicant intends to bring in Curaçao. Applicant operates an online gambling platform, Rollbit.com. As described herein, Applicant intends to bring an action against an individual, James Hopkins ("JH"), whose use of the platform violates Rollbit's Terms and Conditions of use and amounts to tortious acts under Article 6:162 of the Curaçao Civil Code. These violations led to JH being unlawfully enriched (under Article 6:212 of the Curaçao Civil Code) and/or the sum(s) being unduly paid by the Applicant to JH (under Article 6:203 of the Curaçao Civil Code), entitling the Applicant to restitution of that sum. The application is supported by this memorandum of points and authorities, the Declaration of Thomas Aardenburg and the Declaration of Tori Brown. The subpoena to be served on Kraken is included as Attachment 1 in this filing.

Applicant satisfies the statutory requirements of §1782. First, this Court is in "the district in which [the] person resides," pursuant to 28 U.S.C. §1782(a), as Kraken has an office in San Francisco. Second, Applicant is seeking discovery "for use in a proceeding in a foreign…tribunal." *Id.* Third, Applicant qualifies as an "interested person" in the foreign proceeding, as it intends to bring claims against JH.

Discretionary factors set forth by the Supreme Court in *Intel* also support Applicant's request for discovery. *Intel Corp. v. Advanced Micro Devices*, 542 U.S. 241 (2004). As discussed herein, (1) Kraken will not be a party to the foreign proceeding nor is domiciled in Curaçao, and therefore the requested material is not otherwise obtainable; (2) Curaçao courts appear receptive to U.S. federal court assistance; (3) Applicant is not attempting to circumvent any foreign proof-gathering restrictions; and (4) the information requests are narrowly tailored.

## II. BACKGROUND

Rollbit.com ("Rollbit") is a brand name of Bull Gaming N.V., which is incorporated in Curaçao. Declaration of Tori Brown ("Brown Decl.") ¶4. Rollbit offers casino experiences

and sports betting. Brown Decl. ¶4.  To open an account on Rollbit.com, an account owner must accept Terms and Conditions.  Brown Decl. ¶16.  Among other things, Rollbit's Terms and Conditions require that accounts are personal to the named account holder, that players must not play from prohibited jurisdictions, that they must provide satisfactory "Know Your Customer" ("KYC") information, and that they may not gamble on behalf of anyone else or as part of an undisclosed syndicate.  Brown Decl. ¶16.  Applicant believes that JH violated the Terms and Conditions in numerous ways, including by providing inadequate KYC, by playing from a prohibited jurisdiction, and gambling on behalf of or for the benefit of others.

In 2023, JH opened a Rollbit account and from January 2024 began placing wagers on the site.  JH's wagering activity was staggering - over $1 billion in cryptocurrencies.  Brown Decl. ¶9.  To gamble on Rollbit, an individual must have cryptocurrency wallets where funds will be withdrawn for bets and where winnings may be transferred.   JH linked at least three cryptocurrency wallets to his Rollbit account, which can be referred to as:

"Wallet JH-1" a cryptocurrency wallet with associated address:
0x64A6095960E46C1881d40E40Ea478DB33FD3a32b
"Wallet JH-2" a cryptocurrency wallet with associated address:
0x9fd6A184185fF0371f9266C114E66858B53fF978
and "Wallet JH-3" a cryptocurrency wallet with associated address:
0x8E29E9fde1846aa9C6D1d70808d71e045344117f

Between January and April 2024, JH transferred $83.7 million in cryptocurrency from Wallet JH-3 to Rollbit.  Some of JH's wagers resulted in winnings.  Between February and April 2024, JH transferred $115 million in cryptocurrency from Rollbit to Wallet JH-1 and between February 10 and 17, 2024, JH transferred $18 million in cryptocurrency from Rollbit to Wallet JH-2.  Brown Decl. ¶9 and Brown Decl. Ex. B.

In 2024, Applicant became concerned that the accounts registered by JH may be associated with other individuals or a syndicate.  Applicant sent multiple KYC requests to JH in April and May 2024.  Brown Decl. ¶14.  JH provided minimal and insufficient information in response, including a lease agreement for an address which does not exist and a €20 euro

burner phone contract. JH also provided screenshots from another casino account showing a balance of more than $100 million, claiming this to be the source of funds for stakes on Rollbit but without any evidence showing transfers to Rollbit nor the ultimate source of funds for this other casino account. Brown Decl. ¶14. This gave rise to the strong suspicion that JH is not acting in a personal capacity but instead operating on behalf of a syndicate or another person.

In addition to the lack of sufficient KYC information, cryptocurrency transaction information further suggests that JH was not acting in an individual capacity. Applicant analyzed "on-chain" information relating to the flow of funds into Rollbit for use in gambling and out of Rollbit, representing gambling winnings. As further detailed in Brown Decl., there were numerous large and often circular transactions amongst cryptocurrency wallets, including several held with Kraken. Brown Decl. ¶¶9-13.

Kraken is an exchange where users buy and sell cryptocurrency. Brown Decl. ¶6. Applicant is informed and believes that Kraken requests and maintains information regarding the beneficial owners of funds that flow into and out of accounts with Kraken. Brown Decl. ¶18. To open an account with Kraken, an individual must provide personal information, including name, date of birth, street address, and identification documents. Brown Decl. ¶18 and Ex. E. This type of information is highly relevant to Applicant's claims to be brought in Curaçao, as it will shed additional light on the flow of funds from JH's Rollbit account.

Following the on-chain activity, funds from JH's wallets move in a complex and often circular series of transactions. Several of these transactions involve accounts held with Kraken.

    a. On March 22, 2024 at 9:52 a.m. UTC, JH transferred $100 in cryptocurrency from JH-1 to a wallet with the address 0x983ccBD5473f386441f083644eda273B034fa5B5 ("Kraken Bridge 1"). Two hours later, he transferred the same amount ($100) from Kraken Bridge 1 to a Kraken wallet with the address 0x89e51fA8CA5D66cd220bAed62ED01e8951aa7c40 ("Kraken 7"); this

-3-

transaction is identified by transaction reference

0x49cadbf54b7eb1bce44f946a84b1d00b554e8334bbebc1199c0be6c4bbeb5c3e.

b. Between March 25 and 26, JH moved $7.5 million in a series of three similar transactions. On March 25 at 4:40 p.m. JH transferred $2.6 million in cryptocurrency from JH-1 to Kraken Bridge 1. At 5:02 p.m., the same amount ($2.6 million) was transferred from Kraken Bridge 1 to Kraken 7; this transaction is identified by transaction reference

0x2f547d595a9f964eb111455ab29528f9464b72078d4db1b0d3ed0e290388c359.

c. On March 26, 2024 at 12:44 p.m., JH transferred $2.5 million in cryptocurrency from JH-1 to Kraken Bridge 1. Minutes later, the same amount ($2.5 million) was transferred from Kraken Bridge 1 to Kraken 7; this transaction is identified by transaction reference

0xe028f7ea040a4bad3eeff758545ce91ba990ec3475d8fdd8730f027b008952e7.

d. Then on the same day, at 3:23 PM, on March 26, 2024 JH transferred another $2.4 million from JH-1 to Kraken Bridge 1. Thirteen minutes later, he transferred the same amount ($2.4 million) from Kraken Bridge 1 to Kraken 7; this transaction is identified by transaction reference

0x21074f70fec7c86ce0ced356fe1f434883e8e2c364464e1e47aab160a4d66702.

*See* Brown Decl. Ex. C.

For the reasons herein, the court should grant Applicant's request for leave pursuant to 26 U.S.C §1782 to issue a subpoena to Kraken to obtain the information described in the draft subpoena included as Attachment 1.

### III. LEGAL STANDARD

28 U.S.C. §1782 provides a means for individuals or entities to seek federal court assistance in gathering information for use in foreign proceedings. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). Under §1782, an applicant must show: (1) the person from whom discovery is sought "resides or is found" in the district of the district court where the application is made; (2) the discovery is "for use in a proceeding in a foreign or

-4-

Memorandum of Points and Authorities Pursuant to 28 U.S.C. §1782

international tribunal;" and (3) the application is made by an "interested person" or a foreign or international tribunal.

In addition to these statutory factors, a court may consider four discretionary factors outlined by the Supreme Court in *Intel*: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding;" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance;" (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the request is "unduly intrusive or burdensome." *Id.* at 264-65.

§1782 applications may be considered on an *ex parte* basis because the company from whom discovery is sought "will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it." *IPCom GmbH & Co. KG v. Apple Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014).

## IV. ARGUMENT

The application meets the statutory requirements, and all discretionary factors weigh in favor of authorizing discovery.

### a. Statutory Factors

Bull Gaming's request for discovery meets the three statutory requirements under §1782. First, the "person" from whom discovery is sought, Kraken, is "found" in this District. Brown Decl. ¶5. For purposes of a §1782 petition, the Northern District of California has generally held that a corporation is "found" in any district in which it maintains an office. *Super Vitaminas, S.A.*, No. 17-mc-80125-SVK, 2017 U.S. Dist. LEXIS 191845, at *5 (N.D. Cal. Nov. 20, 2017). Kraken maintains an office at 100 Pine Street, PMB A188, Suite 1250, Office 6, San Francisco, CA 94114. Brown Decl. Ex. A.

Second, Kraken seeks discovery for use in a proceeding before a foreign tribunal. As described above, Applicant believes that JH's activities violated the Terms and Conditions of use in numerous ways, including by wagering on behalf of and for the benefit of others and

accessing the site from a prohibited jurisdiction. These violations led to JH being unlawfully enriched (under Article 6:212 of the Curaçao Civil Code) and/or the sum being unduly paid by the Applicant to JH (under Article 6:203 of the Curaçao Civil Code), entitling the Applicant to restitution of that sum. Declaration of Thomas Aardenburg ("Aardenburg Decl.") ¶6. Applicant intends to file suit in Curaçao to enforce all rights and seek all remedies accordingly. Brown Decl. ¶17. Courts have found that a proceeding can be in reasonable contemplation to satisfy this factor; it does not need not be in process. *Intel*, 542 U.S. at 259.

Third, as the party intending to commence a proceeding, Applicant qualifies as an "interested" party pursuant to §1782. *See Intel*, 542 U.S. at 256 (noting that there is "[n]o doubt litigants are included among…the interested person[s] who may invoke §1782.")

### b. Discretionary Factors

Given that the Application meets the three statutory factors under §1782, the court may now consider discretionary factors, which all weigh in Applicant's favor.

#### i. Kraken is not a participant in the foreign action

The first *Intel* factor considers whether "the person from whom discovery is sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 264. Whereas a participant may be able to obtain information from another participant through the foreign tribunal's procedures, nonparticipants "may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id*. The contemplated proceeding is a dispute between Bull Gaming and JH; Kraken will not be a participant. Aardenburg Decl. ¶9. Kraken will be outside Curaçao's jurisdictional reach and Applicant will be unable to access the information without §1782 assistance. *Id.* Therefore, the first *Intel* factor weighs in favor of granting the Application.

#### ii. Curaçao courts are receptive to U.S. judicial assistance

Under the second *Intel* factor, a court considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. Courts err on the side of authorizing discovery absent authoritative proof that the foreign

tribunal would reject evidence obtained with the aid of §1782. *Bitwallet PTE. Ltd. v. Meta Platforms, Inc.*, No. 22-mc-80182-HSG, 2023 U.S. Dist. LEXIS 15458 at *3 (N.D. Cal. Jan. 30, 2023); *see Palantir Techs., Inc. v. Abramowitz*, 415 F. Supp. 3d 907, 915 (N.D. Cal. 2019). Curaçao courts are receptive to information obtained with U.S. federal court assistance. Aardenburg Decl., ¶10. Accordingly, this factor also weighs in favor of granting this application.

### iii. There is no circumvention of foreign discovery restrictions or other policies

The third *Intel* factor considers whether the discovery request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. "Courts have found that this factor weighs in favor of discovery where there is nothing to suggest that [the applicant] is attempting to circumvent foreign proof-gathering restrictions." *In re Med. Inc. Ass'n Smile Create*, 547 F. Supp. 3d 894, 899 (N.D. Cal. 2021) (internal citations omitted.) Applicant is not attempting to circumvent any Curaçao evidence-gathering rules or procedures. Aardenburg Decl. ¶11. Therefore, this factor weighs in favor of granting the Application.

### iv. The request is not unduly burdensome or intrusive

Bull Gaming seeks limited information from Kraken. The draft subpoena included as Attachment 1 is narrowly tailored and asks for identifying information associated with four specific transactions in and out of an account controlled by Kraken. This information should be easily accessible to Kraken. As the requests are not duly intrusive or burdensome, the fourth factor weighs in favor of granting the application.

## V. CONCLUSION

All requirements of §1782 are met and all discretionary factors from *Intel* weigh in Applicant's favor. The Court should exercise its discretion and grant this application to authorize Bull Gaming to seek limited discovery from Kraken to allow Applicant to identify the individuals or business entities associated with the transactions and related wallets as described in this Memorandum of Points and Authorities, the accompanying Declarations, and

exhibits.

Dated: August 12, 2024						STEVENS BECKER P.C.

								By: ___/s/ Lily Becker___
								Lily Becker
								Attorney for Applicant
								BULL GAMING N.V.