UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BULL GAMING N.V., <br><br> Petitioner, <br><br> v. <br><br> PAYWARD, INC., <br><br> Respondent. | Case No. 24-mc-80207-LJC <br><br> **ORDER GRANTING MOTION TO INTERVENE** <br><br> Re: Dkt. No. 15 |

## I.   INTRODUCTION

Petitioner Bull Gaming N.V. (Bull Gaming), an online gambling platform based in Curaçao, filed an *ex parte* application for an order pursuant to 28 U.S. Code section 1782 for leave to issue a subpoena on Respondent Payward, Inc. ECF No. 1-2 at 4. Payward, Inc., doing business as Kraken, is a cryptocurrency exchange based in San Francisco. *Id.* at 4, 6. Bull Gaming seeks information about a series of cryptocurrency transactions between different accounts maintained by Kraken that it believes are connected to "known poker player" James Hopkins, who has an account with Bull Gaming and has wagered significant sums on Bull Gaming's platform. *Id.* at 5-6; ECF No. 15-4 (Hopkins Decl. ¶ 8). Bull Gaming suspects Hopkins has gambled on behalf of a syndicate and violated its terms and conditions, and intends to sue him in Curaçao. ECF No. 1-2 at 4-5. Hopkins brought the instant Motion to Intervene in Bull Gaming's 1782 application and seeks to move for a protective order. ECF Nos. 15, 15-2.

The Court assumes the parties' and the proposed intervenor's familiarity with the factual background and the arguments. The Court finds the matter suitable for resolution without oral argument and vacates the hearing set for December 17, 2024. For the reasons discussed below,

1  proposed intervenor James Hopkins' Motion to Intervene is GRANTED.[1]

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 24 specifies when a nonparty may intervene in an action. Under Rule 24(a)(2), courts must allow nonparties who claim "an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest" to intervene. Fed. R. Civ. P. 24(a)(2). Under Rule 24(b)(2), courts may allow a nonparty who "has a claim or defense that shares with the main action a common question of law or fact" to intervene. Fed. R. Civ. P. 24(b)(1). In evaluating whether to allow permissive intervention under 24(b)(1), courts "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Hopkins seeks to intervene as a matter of right or, alternatively, seeks permissive intervention. Intervention is warranted under both standards.

## III.  ANALYSIS

### A.  Intervention as a Matter of Right

Courts apply a four-step test in determining whether to grant a motion to intervene as a matter of right under Rule 24(a)(2):

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011). It is the proposed intervenor's burden to "show that these four elements have been met[.]" *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 896 (9th Cir. 2011). "Courts are to take all well-pleaded,

---

[1] The undersigned may rule on the Motion to Intervene without first obtaining Hopkins' consent. *Robert Ito Farm, Inc. v. County of Maui*, 842 F.3d 681, 684 (9th Cir. 2016) ("[A] magistrate judge who has the consent of the named parties to the suit may rule on a prospective intervenor's motion to intervene without the prospective intervenor's consent.").

nonclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001). Rule 24(a)(2) is construed broadly in "in favor of proposed intervenors." *Id.* (quotations omitted).

### 1. Timeliness

In evaluating if a motion to intervene is timely, courts assess "(1) the stage of the proceeding; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *United States v. State of Or.,* 745 F.2d 550, 552 (9th Cir. 1984). This matter is in its initial stages, as the Court has not yet ruled on the 1782 application. Bull Gaming is not "facing any impending statute of limitations" in the anticipated Curaçao action, and thus, there is little indication of prejudice. Hopkins filed the instant motion less than three months after the 1782 application was filed and likely within a month of learning about the 1782 application. ECF No. 16-1 (Ehling Decl.) ¶¶ 3-4. In light of these facts, the motion is timely. *See Droplets, Inc. v. Yahoo! Inc.*, No. 12-cv-03733, 2019 WL 9443778, at *5 (N.D. Cal. Nov. 19, 2019) (finding that a six-month delay in filing a motion to intervene was "not extraordinary" and permitting intervention).

### 2. Significant Protectable Interest

Hopkins has a significant protectable interest in the information Bull Gaming is trying to obtain through the 1782 application. "Whether an applicant for intervention as of right demonstrates sufficient interest […] is a practical, threshold inquiry, and no specific legal or equitable interest need be established." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (cleaned up). Bull Gaming seeks information about transfers of cryptocurrency between two cryptocurrency wallets, Kraken Bridge 1 and Kraken 7. ECF No. 17 at 3-4. While neither account is maintained by Hopkins, he transferred cryptocurrency he won gambling on Bull Gaming's platform to Kraken Bridge 1, which was then immediately transferred to Kraken 7. *Id.* Hopkins asserts that he has a protectable interest in his personal financial transactions. ECF No. 15 at 14.

Bull Gaming argues that Hopkins does not have a protectable interest in the transfers from Kraken Bridge 1 to Kraken 7 as he does not maintain either of these accounts. ECF No. 17 at 3-4.

3

1  The Court is not persuaded. The sole reason Bull Gaming is seeking information about the
2  transfers between Kraken Bridge 1 and Kraken 7 is because it believes this will provide evidence
3  that Hopkins was betting "on behalf of and for the benefit of others" in violation of Bull Gaming's
4  terms of service. ECF No. 1-2 at 8. Bull Gaming's contention that the transfers are linked to
5  Hopkins, and thus an appropriate subject for the 1782 application, undercuts its argument against
6  the instant motion that Hopkins has no interest in the transfers. Furthermore, Bull Gaming is trying
7  to identify the owner of Kraken Bridge 1; as Hopkins transferred cryptocurrency to Kraken Bridge
8  1, information identifying Kraken Bridge 1 would reveal who Hopkins transferred cryptocurrency
9  to. Hopkins has an interest in protecting such private financial information.

10  More broadly, in the context of section 1782 applications, courts have regularly recognized
11  that the "ultimate target" of a 1782 application has an interest in the resolution of the application
12  and must be permitted to intervene. *de Leon v. Clorox Co.,* No. 19-mc-80296, 2020 WL 4584204,
13  at *4 (N.D. Cal. Aug. 10, 2020); *see In re Ambercroft Trading Ltd.*, No. 18-mc-80074, 2018 WL
14  4773187, at *4 (N.D. Cal. Oct. 3, 2018) ("It is well-settled that a party against whom the requested
15  information will be used has standing to challenge the issuance of § 1782 subpoenas under the
16  Rules of Civil Procedure and under the statute itself.") (quotations omitted); *In re Ex Parte*
17  *Application of Path Network, Inc. v. Discord,* No. 23-mc-80148, 2024 WL 4828075, at *3 (N.D.
18  Cal. Nov. 18, 2024) (granting the movant's motion to intervene as a matter of right as he had a
19  "significant interest" in the outcome of a § 1782 application that sought information from his
20  online account). Bull Gaming intends to use information from Kraken about the cryptocurrency
21  transactions against Hopkins; Hopkins, as the "ultimate target" of the 1782 application, must be
22  permitted to challenge the issuance of the 1782 subpoena. *de Leon v. Clorox,* 2020 WL 4584204,
23  at *4.

### 3. Impact on the Proposed Intervenor

25  If a proposed intervenor "would be substantially affected in a practical sense by the
26  determination made in an action, he should, as a general rule, be entitled to intervene." Fed. R.
27  Civ. P. 24 advisory committee's note; *Berg,* 268 F.3d at 822 ("We follow the guidance of Rule 24
28  advisory committee notes."); *see Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th

4

Cir. 2011) (holding that a proposed intervenor must "be so situated that the disposition of the action may as a practical matter impair or impede [their] ability to protect that interest."). The Ninth Circuit has recognized that analyzing whether a proposed intervenor would be substantially impacted by a determination in the underlying action is closely intertwined with whether the proposed intervenor has a protectable interest in the action. *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (cleaned up) ("Having found that appellants have a significant protectable interest, this court had little difficulty concluding that the disposition of the case may, as a practical matter, affect it.") As Hopkins has a protectable interest in the information sought through the 1782 application, it follows that "the disposition [of the 1782 application] may, as a practical matter, affect" Hopkins. *Id*. If Hopkins does not intervene and the court grants Bull Gaming's § 1782 application, Bull Gaming may use information obtained from Kraken against Hopkins in the contemplated Curaçao action.

### 4. Adequacy of Parties' Representation

Lastly, the proposed intervenor must demonstrate that their interests will not be adequately represented by the present parties. *See Arakaki v. Cayetano,* 324 F.3d 1078, 1086 (9th Cir.2003). This is a low bar: they just need to "demonstrate that representation of [their] interests may be inadequate." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011). To evaluate the adequacy of representation, courts examine three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Id.* "If an applicant for intervention and an existing party share the same ultimate objective, a presumption of adequacy of representation arises." *Id.*

Hopkins' interests are clearly at cross-purposes with Bull Gaming's interests. A closer question is if Hopkins' interests are sufficiently represented by Kraken. Kraken, presumably, has some interest in not disclosing its customers' account information. However, it has apparently agreed to produce account records for Kraken Bridge 1, including:

(a) The full name and residential address and contact details including

> email addresses, telephone numbers, fax numbers etc. provided by the client as part of the account opening and verification process;
> (b) Historical account activity and transaction data;
> (c) Verification information provided to [Kraken] including copies of passports, driving licenses, and Government-issued identity cards;
> (e) Browser information;
> (f) Log information; and
> (g) Banking and cryptocurrency address information for the account.

ECF No. 12 (Notice and Stipulation Regarding Production of Documents) at 3. Hopkins, on the other hand, seeks to block Kraken from providing any information about Kraken Bridge 1 and Kraken 7. *See* ECF No. 15-2 (Proposed Motion for Protective Order) at 8. Kraken, in agreeing to comply in part with Bull Gaming's subpoena despite Hopkins' opposition, is not fully representing Hopkins' interests and has demonstrated that it is not willing to wholly oppose the subpoena. This is sufficient to show that Kraken "may" not adequately represent Hopkins' interests. *See Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011).

Bull Gaming argues that Hopkins' interests are sufficiently represented by the present parties because Kraken and Bull Gaming "have already agreed that they will propose a protective order." ECF No. 17 at 4. Although the Court is not aware of the details of the protective order, it presumably would restrict what Bull Gaming could do with the information it receives from Kraken, such as keeping the information confidential or only using it in the contemplated Curaçao action, but would not prevent Kraken from disclosing information about Kraken Bridge 1 to Bull Gaming entirely. The Court has no basis to assume that Hopkins' interests would be adequately protected by such a protective order.

The Court therefore finds that Hopkins may intervene as a matter of right.

**B.    Permissive Intervention**

Hopkins requests, in the alternative, that he be permitted to intervene under Rule 24(b)(1). Rule 24(b)(1)(B) establishes that courts may permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." In analyzing Rule 24(b)(1)(B) in the context of 1782 applications, the Northern District has interpreted "the main action" to mean the contemplated lawsuit the 1782 applicant intends to file. *See In re Ambercroft*, 2018 WL 4773187, at *4. Here, as in *In re Ambercroft*, Hopkins' alleged misconduct that Bull

Gaming seeks to obtain information about through the 1782 application is "at the center" of Bull Gaming's "potential lawsuit" against Hopkins. *Id*. This weighs in favor of allowing intervention. Again, this is consistent with the "well-settled" law that "a party against whom the requested information will be used has standing to challenge the issuance of § 1782 subpoenas under the Rules of Civil Procedure and under the statute itself." *Id.* (quoting *In re Rivada Networks*, 230 F. Supp. 3d 467, 472 (E.D. Va. 2017)). The Court finds that permissive intervention is warranted.

## IV.  CONCLUSION

For the reasons discussed above, Proposed Intervenor James Hopkins' Motion to Intervene is GRANTED. Discovery is temporarily STAYED pending the Court's determination of Hopkins' objections to the 1782 application and Kraken is directed to refrain from providing any information in response to Bull Gaming's requests pending the Court's determination. Hopkins' Motion for Protective Order and Opposition (ECF No. 15-2) is deemed accepted for filing and his proposed order filed therewith is deemed submitted. Bull Gaming's Response to Hopkins' Opposition to the 1782 Application (ECF No. 18, Ex. A) is deemed accepted for filing.

Kraken's Response to Hopkins' Opposition to the 1782 Application, if it wishes to file one, is due by December 27, 2024. Hopkins' Reply is due by January 7, 2025. A hearing is set for January 21, 2025, at 10:30am.

**IT IS SO ORDERED.**

Dated: December 13, 2024

LISA J. CISNEROS
United States Magistrate Judge